# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEATT CORPORATION, a Nevada corporation; EXCEED HOLDINGS (PTY) LTD, a South African company,<br><br>                      Plaintiffs,<br>vs.<br><br>INNOVATIVE SAFETY TECNOLOGY, LLC, a California limited liability company; KEVIN HEATH ENTERPRISES, INC., a California corporation; KEVIN HEATH, an individual; E.V. TECHNOLOGY, a Chinese business entity,<br><br>                      Defendants. | CASE NO. 09cv1301 - IEG - POR<br><br>ORDER GRANTING IN PART AND DENYING IN PART THE MOTION TO DISMISS OF DEFENDANTS KEVIN HEATH ENTERPRISES, INC., KEVIN HEATH, and E.V. TECHNOLOGY<br><br>[Doc. No. 6.] |

      In this action for misappropriation of trade secrets, Defendants Kevin Heath Enterprises, Inc., Kevin Heath, and E.V. Technology (collectively "Heath defendants") filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 6.) Plaintiffs filed an opposition and the Heath Defendants filed a reply. Having considered the parties' arguments, and for the reasons set forth below, the Court grants in part and denies in part the Heath Defendants' motion.

## BACKGROUND

**A.    Factual Background**

      According to the Complaint, Dr. Christopher Leatt pioneered the development of a device to provide superior neck protection for the participants of motorsports.[1] From 2003 through 2005, Dr. Leatt developed various neck braces, and filed patent applications in South Africa and the United

---

[1] In this context, the parties use the term "motorsports" to refer to both car racing and motorcycle riding.

1  States. Two variants of Dr. Leatt's original design are known as the Moto-R and the Moto-GPX neck
2  braces. Dr. Leatt ultimately assigned the patents on these neck braces to plaintiff Exceed Holdings
3  (Pty) Ltd ("Exceed").

4  Exceed and Leatt Corporation were established in 2005 to develop and market safety devices
5  for motorsports. Beginning in 2005, Leatt began to market the original Moto-R device as well as the
6  Moto-GPX. In early fall of 2007, Plaintiffs began to prototype a new version of the Moto-R brace,
7  known as the Moto-R2. Plaintiffs attempted to gain approval for the Moto-R2 prototype from the
8  Federation Internationale de L'Automobile (FIA), the world's top motorsport authority. However,
9  as a prerequisite to approval, the FIA required Plaintiffs to modify the prototype. Plaintiffs continue
10 to develop and test the Moto-R2 prototype, however, they have not disclosed the design to the public.

11 Two of Leatt's former employees played critical roles in the alleged misappropriation of trade
12 secrets. Beginning in February 2007, Karl Ebel became the head of marketing for Leatt. Meanwhile,
13 Leatt hired Grant Nelson, as a consulting engineer to help design Leatt neck braces. Both Ebel and
14 Nelson signed confidentiality agreements with Plaintiffs. In July 2007, Ebel and Nelson took the
15 second prototype of Moto-R2 to the United States for testing.

16 Soon thereafter, certain events transpired that led to the resignation of both Ebel and Nelson.
17 In 2007, Leatt discovered Nelson had filed a patent for a version of the Moto-R2 in his own name,
18 using his own attorney. After Leatt confronted Nelson, Nelson assigned the patent to Leatt. In
19 January 2008, Nelson resigned from Leatt ostensibly to spend more time with his family. A short time
20 thereafter, Ebel also quit Leatt.

21 In March 2008, Nelson, Ebel, and Doug Williams (the owner of Williams Racing team),
22 formed a partnership to develop a product called the DefNder. According to Plaintiffs, Neslon filed
23 a patent for the DefNder that bears a strong resemblance to the Moto-R2 that is "unmistakable."
24 (Compl. ¶ 41.) To promote the DefNder in the United States, Ebel, Nelson, and Williams formed
25 defendant Innovative Safety Technology ("IST"), a California limited liability company.

26 In October 2008, IST entered into a distribution agreement with Kevin Heath, who arranged
27 for the manufacture and distribution of the DefNder. Heath arranged for a Chinese company, EV
28 Technology, to produce the DefNder product. Heath is the founder and owner of EVT. Additionally,

Plaintiffs allege Heath owned the websites defNder.com, defNderneckbrace.com, and evt-china.com.

**B.     South African Action**

When Leatt discovered the DefNder, he noticed a similarity between the product and the Moto-R2 prototype. Leatt commenced arbitration proceedings in South Africa for theft and improper disclosure of proprietary and confidential information. In December 2008, Leatt obtained the South African equivalent of a preliminary injunction, prohibiting Nelson and Ebel from exploiting Leatt's confidential information. Notwithstanding this order, Williams and IST continued to promote the DefNder in South Africa. Because IST's action in the United Sates are beyond the jurisdiction of the South African court, the Plaintiffs brought this suit against IST.

**C.     Procedural History**

On June 16, 2009, Plaintiffs filed the instant action. Plaintiffs bring three causes of action: (1) misappropriation of trade secrets pursuant to California Civil Code §3426; (2) unfair competition under California Business and Professions Code § 17200, et seq.; and (3) tortious interference with prospective business relations. On July 8, 2009, the Heath Defendants brought this motion to dismiss.

**LEGAL STANDARD**

A complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.544 (2007). The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).

Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). Moreover, it is improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). Accordingly, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950.

However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the

1  reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.  "The
2  plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer
3  possibility that a defendant has acted unlawfully." Id.  "Where a complaint pleads facts that are
4  'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and
5  plausibility of entitlement to relief.' " Id. (citing Twombly, 550 U.S. at 557).

## DISCUSSION

**A.     Misappropriation of Trade Secrets**

i.      Legal Standard

To state a cause of action for misappropriation of trade secrets under California's Uniform Trade Secrets Act, a "plaintiff must allege two primary elements: (1) the existence of a trade secret, and (2) misappropriation of the trade secret. AccuImage Diagnostics Corp.v. Terarecon, Inc., 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003) (citing Cal. Civ. Code §3426.1(b)).  The Heath Defendants do not dispute the Moto-R2 design is a "trade secret."  Accordingly, the only issue is whether their alleged actions constitute "misappropriation" under the statute.

In the present context, section 3426 defines "misappropriation" as the "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means."  Cal. Civ. Code §3426.1(b).

ii.     Parties' Arguments

The Heath Defendants argue Plaintiffs have not identified any facts to support the allegation the Heath Defendants knew or should have known the DefNder was based upon Leatt's trade secrets. In support of their argument, the Heath Defendants cite California Police Activities League v. California Police Youth Charities, Inc., 2009 WL 537091, *3 (N.D. Cal. 2009).

Plaintiffs argue the Complaint sufficiently alleges the Heath Defendants had knowledge. Plaintiffs argue they brought suit in South Africa against Mr. Ebel and Mr. Nelson based on Plaintiff's trade secrets.  As part of the suit, Plaintiffs argue, they obtained the equivalent of a preliminary injunction from the South African court.  Plaintiffs believe this gave the Heath Defendants notice the trade secrets were acquired by improper means.  Plaintiffs distinguish California Police Activities League. In that case, the Court dismissed the action because the plaintiff failed to allege ownership

of a trade secret.

iii.   Analysis

Plaintiffs have stated a claim for misappropriation of trade secrets in that they allege ownership of a trade secret. Plaintiffs further allege they sent a cease and desist letter to all Defendants on April 23, 2009. This letter notified the Heath Defendants that Ebel and Nelson may have used misappropriated trade secrets to design the DefNder. A reasonable investigation following the receipt of this letter would have uncovered the South African action, in which the court prohibited Ebel and Nelson from using the trade secrets. Accordingly, the letter gave the Heath Defendants reason to know the trade secrets were acquired through improper means.

The Heath Defendants misrepresent the holding of California Police Activities League. In that case, the court found a charitable organization failed to state a misappropriation of trade secrets claim because it failed to allege it owned the trade secret. At no point did the court in California Police Activities League address the knowledge element of the misappropriation claim. Therefore, the Court finds the case inapplicable and DENIES the Heath Defendants' motion.

**B.    Unfair Competition**

i.   Legal Standard

California law prohibits unfair competition, defined as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Because section 17200 is written in the disjunctive, it prohibits three separate acts: (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices. Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 180 (1999). "Unlawful" practices are any practices prohibited by law, "be it civil or criminal, federal, state, or municipal, statutory, regulatory or court-made." People of California v. Kinder Morgan Energy Partners, L.P., 569 F. Supp. 2d 1073, 1090 (S.D. Cal. 2008). The predicate law need not provide for private civil enforcement; section 17200 "borrows violations of other laws and treats them as unlawful practices independently actionable." Id.

ii.   Parties' Arguments

Defendants argue Plaintiffs' unfair competition claim warrants dismissal because the underlying misappropriation claim is flawed, therefore, there is no unlawful act. Plaintiffs believe

they have stated a claim for unfair competition because the alleged misappropriation was unlawful.

iii.     Analysis

Plaintiffs have stated a cause of action for unfair competition sufficient to withstand a Rule 12(b)(6) motion to dismiss. As discussed above, Plaintiffs have stated a claim against the Heath Defendants for misappropriation of trade secrets under Cal. Civ. Code § 3426.1(b). This alleged violation is a practice prohibited by law, satisfying the unlawful prong of California's unfair competition law. Accordingly, the Court finds Plaintiffs have stated a claim upon which relief may be granted and DENIES the Heath Defendants' motion.

**C.     Tortious Interference**

i.     Legal Standard

The tort of intentional interference with prospective economic advantage has five elements: "(1) an economic relationship between plaintiff and a third party; (2) defendants' knowledge of that relationship; (3) that defendant intentionally attempted to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages." Hiraide v. Vast Systems Technology Corp., 2009 WL 2390352, at *13 (N.D. Cal. August 3, 2009). Furthermore, Plaintiffs must allege an "independently wrongful" act. See Korea Supply Co. v. Lockheed Martin Corp, 29 Cal. 4th 1134, 1158-59 (2003). "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." Id.

ii.     Parties' Arguments

Defendants argue Plaintiffs fail to allege an independently wrongful act because the misappropriation claim is flawed. Plaintiffs argue they have sufficiently alleged misappropriation, therefore, their tortious interference claim is also sufficient.

iii.     Analysis

The parties do not dispute Plaintiffs have sufficiently alleged the first five elements of the tort, therefore, the Court focuses its analysis on the "independently wrongful" requirement. As discussed in detail above, the Court finds Plaintiffs have sufficiently alleged a claim for misappropriation of trade secrets. By alleging the misappropriation claim, Plaintiffs have alleged an act that is unlawful, that is, it is proscribed by Cal. Civ. Code § 3426.1(b). Therefore, the Court finds Plaintiffs have stated

a claim for tortious interference and DENIES Defendants' motion.

**D.     Alter Ego Liability**

i.      Legal Standard

The alter ego doctrine, a.k.a. piercing the corporate veil, arises when a plaintiff requests the court to disregard the corporate entity and hold the underlying individuals liable for the actions of the corporation. Neilson v. Union Bank of California, N.A., 290 F. Supp. 2d 1101, 1115 (C.D. Cal. 2003). To invoke the doctrine, Plaintiffs must allege two elements: (1) such a unity of interest and ownership between the corporation and the individual that separate personalities do not exist and (2) an inequitable result if the corporate veil is not pierced. Id.

ii.     Parties' Arguments

Defendants assert Plaintiffs' boilerplate statement of their belief "each Defendant was the alter ego, agent, conspirator, and/or aider and abettor of the other Defendants" is insufficient to maintain alter ego liability. The Heath Defendants note the complaint merely contains a boilerplate recitation of alter ego liability, couched in conclusory language.

Plaintiffs allege they have sufficiently pleaded a claim for alter ego liability. Plaintiffs rely on the following facts: (1) Kevin Heath is both the president of Kevin Heath Enterprises, Inc. and the owner and operator of E.V. Technologies; (2) Kevin Heath owns and operates the website for E.V. Technologies; (3) E.V. Technologies manufactures the DefNder; and (4) other DefNder websites are registered to Kevin Heath.

iii.    Analysis

Plaintiffs attempt to bootstrap the associations between the Heath Defendants into an alter ego claim against all Defendants. Paragraph 11 of Plaintiffs complaint reads:

> Upon information and belief, Defendants, each of them, were in some manner responsible for the acts alleged herein and the harm, losses and damages suffered by Plaintiffs as alleged herein. Upon information and belief, while participating in such acts, each Defendant was the alter ego, agent, conspirator, and/or aider and abettor of the other Defendants and was acting in the course and scope of such agency and/or acted with the permission consent [sic], authorization and/or ratification of the other Defendants.

(Compl. ¶ 11.) Clearly, this paragraph alleges all Defendants were the alter egos of each other. However, Plaintiffs fail to show any unity of interest between the Heath Defendants and IST. At most,

1 Plaintiffs allege the Heath Defendants did business with IST: the Heath Defendants allegedly
2 manufactured and distributed products for IST. This simple business transaction does not somehow
3 merge IST with the Heath Defendants. There is simply no basis for imposing alter ego liability on one
4 business for doing business with another. Plaintiffs have not sufficiently alleged an alter ego claim.

5 Moreover, even if Plaintiffs are trying to make the alter ego claim only against the Heath
6 Defendants, the allegations are insufficient. Plaintiffs have not shown such a unity of interest and
7 ownership between the corporation and the individual that separate personalities do not exist.
8 Traditionally, this showing requires allegations of factors such as co-mingling of funds, diverted
9 funds, or failure to maintain corporate minutes. See, e.g., Arnold v. Browne, 27 Cal. App. 3d 386
10 (1972). Plaintiffs do not allege any of these factors; they only allege Kevin Heath is the owner and
11 president of two corporations and their associated websites. Without more, Plaintiffs' alter ego claim
12 cannot survive a Rule 12(b)(6) motion. Accordingly, the Court DISMISSES WITHOUT PREJUDICE
13 Plaintiffs' alter ego claim.

## CONCLUSION

For the foregoing reasons, the Court:

(1) DENIES Defendants' motion with respect to the misappropriation of trade secrets claim;

(2) DENIES Defendants' motion with respect to the unfair competition claim;

(3) DENIES Defendants' motion with respect to the tortious interference claim;

(4) DISMISSES WITHOUT PREJUDICE Plaintiffs' alter-ego claim.

Plaintiff may file an amended complaint to correct the deficiencies set forth above within 20 days of the filing of this order.

**IT IS SO ORDERED.**

DATED: August 24, 2009

*Irma E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**