1

2

3

4

5

6

7

8

9

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10 LEATT CORPORATION, a Nevada corporation; and EXCEED HOLDINGS (PTY) LTD., a South African company, | CASE NO. 09-CV-1301 - IEG (POR) |
| 11 | ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |
| 12                                          Plaintiffs, | |
| 13          vs. | [Doc. No. 67] |
| 14 INNOVATIVE SAFETY TECHNOLOGY, LLC, a California limited liability company; KEVIN HEATH ENTERPRISES, INC., a California corporation; KEVIN HEATH, an individual; and E.V. TECHNOLOGY,  a Chinese business entity, | |
| 15 | |
| 16 | |
| 17                                          Defendants. | |
| 18 | |

19

20        This is a case about alleged trade secret misappropriation. Currently before the Court is

21 Defendants Kevin Heath, Kevin Heath Enterprises, Inc., and E.V. Technology's (collectively, "Heath

22 Defendants") Motion to Dismiss Plaintiffs' claims for enforcement of foreign arbitration award, unfair

23 competition, and tortious interference. Having considered the parties' arguments, and for the reasons

24 set forth below, the Court **GRANTS IN PART and DENIES IN PART** the motion to dismiss.

                                **BACKGROUND**

26 **I.       Factual background**

27        The factual and procedural background in this case is set forth in great detail in the Court's

28 previous order. See Leatt Corp. v. Innovative Safety Tech., LLC, No. 09-CV-1301-IEG (POR), 2010

WL 1526382, at **1-5 (S.D. Cal. Apr. 15, 2010). As relevant to this motion, Plaintiffs Leatt Corporation ("Leatt") and Exceed Holdings (Pty) Ltd. ("Xceed") allege to have spent many years of independent research and development to create neck safety braces for use in motorsports. By 2006, these efforts culminated in the development of the Moto-R brace for use with cars and the Moto-GPX brace for use with motorcycles. A new version of the Moto-R was allegedly prototyped in or around the late summer and/or early fall of 2006 ("Prototype 1"). Leatt then designed and built a second prototype around the summer of 2007 ("Prototype 2").

According to Plaintiffs, starting from January 2008, two of their employees–Grant Nelson and Karl Ebel–stole and improperly disclosed and commercialized Plaintiffs' proprietary and confidential information concerning Prototype 2. Subsequently, Plaintiffs allege Nelson and Ebel, working together with an investor by the name of Doug Williams, developed and began production of a neck brace with a raised stabilizer bar similar to Prototype 2 ("the DefNder"). In or around June 2008, Nelson, Ebel, and Williams formed Defendant Innovative Safety Technology, LLC ("IST"), which listed all three as managers or members.

In summer or fall of 2008, IST entered into a distribution agreement with Defendant Kevin Heath, who arranged for the DefNder to be manufactured in China and to be imported and sold in the United States through two of his companies: E.V. Technology ("EVT"), a Chinese business entity, and Kevin Heath Enterprises, Inc. ("KHE"), a California corporation. Plaintiffs allege Mr. Heath personally, and through his companies, directed, authorized, and participated in the wrongful acts committed by the other Defendants, and that he assisted and worked in concert with IST to manufacture, import, market, sell, and offer for sale the DefNder.

**II.     The South African action**

To protect their proprietary and confidential information, Plaintiffs first filed suit in South Africa against Nelson and Ebel, and subsequently Williams, for misappropriating Plaintiffs' trade secrets and for copyright infringement. On December 5, 2008, Plaintiffs received an interdict (similar to a preliminary injunction) against Nelson and Ebel that prohibited them from disclosing, copying, selling, or distributing certain specific features of Prototype 2, including any sale or distribution of the DefNder product. On June 11, 2009, Plaintiffs received a similar interdict against Williams.

Subsequently, the South African action was referred to arbitration. The Arbitrator eventually determined that the overall shapes of Prototype 1 and 2 did not form part of the state of the art as of January 25, 2008. (SFAC, Ex. G, ¶ 98 [hereinafter, "Arbitration Award"].) The Arbitrator also concluded that even though elements of Prototype 2 were present on the Moto-R device and in other devices available in the marketplace, "there were significant design differences as between Prototype 2 and the prior art," and therefore "the overall design of Prototype 2 constituted confidential information." (Id. ¶ 113.) In the end, although there were some differences, the Arbitrator found that the DefNder conceptually resembled Prototype 2, particularly in relation to the stabilizer bar. (Id. ¶¶ 257, 350.) The Arbitrator found that Nelson used his knowledge of the design of Prototype 2 in designing the DefNder, and that such knowledge constituted confidential information proprietary to Plaintiffs. (Id. ¶¶ 348-53.) According to the Arbitrator, the following confidential information was misused by Nelson: (1) the harness channels and their strategic placement, (2) the elevated frontal support bars (the stabilizer bars), and (3) the overall shape of the brace. (Id. ¶ 355.) The Arbitrator also found that Ebel and Williams were liable for aiding and abetting Nelson. (Id. ¶ 362.) Finally, having concluded that the misappropriation provided Nelson with a "springboard" of between 18 and 24 months, the Arbitrator found that justice would be served if Nelson, Ebel, and Williams were enjoined until July 31, 2010 from using or disclosing the above confidential information. (Id. ¶¶ 377, 386.)

**III.    Procedural history**

Plaintiffs commenced the present action in this Court on June 16, 2009. [Doc. No. 1]. After the Court ruled on Defendants' Motion to Dismiss, Plaintiffs filed a First Amended Complaint ("FAC") on September 14, 2009. [See Doc. Nos. 16, 17]. Plaintiffs thereafter moved for a preliminary injunction, which the Court granted in part and denied in part on April 15, 2010. [Doc. No. 64]. Subsequently, Plaintiffs filed a Supplemental First Amended Complaint ("SFAC"), alleging causes of action for: (1) misappropriation of trade secrets; (2) unfair competition; (3) tortious interference; and (4) enforcement of foreign arbitration award. [Doc. No. 66].

Currently before the Court is Heath Defendants' motion to dismiss, filed on May 7, 2010. Plaintiffs filed an opposition, and the Heath Defendants replied. The Court subsequently took the motion under submission pursuant to Civil Local Rule 7.1(d)(1).

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. A complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.544, 570 (2007). The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a cognizable legal claim." SmileCare Dental Group v. Delta Dental Plan of Cal., 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009) (citation omitted).

Despite the deference, the court need not accept "legal conclusions" as true. Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949-50 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Iqbal, 129 S. Ct. at 1950.

**DISCUSSION**

The Heath Defendants first seek dismissal of Plaintiffs' claim for enforcement of a foreign arbitration award on the ground that they were not parties and did not participate in any way, shape, or form in the South African action. Next, the Heath Defendants also seek dismissal of Plaintiffs' unfair competition and tortious interference claims because they are preempted by the Uniform Trade Secrets Act. The Court addresses each of these arguments in turn.

**I.      Enforcement of a foreign arbitration award**

In their fourth cause of action, Plaintiffs rely on the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 53 ("Convention"), as implemented by the Federal Arbitration Act, 9 U.S.C. §§ 201-08 ("FAA"), to seek enforcement of the Arbitration Award against Defendants. Under the Convention, "the district court's role in reviewing a foreign arbitral award is strictly limited" and "'the showing required to avoid summary confirmance is high.'" Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15,

19, 23 (2d Cir. 1997); <u>see also</u> <u>Balen v. Holland Am. Line Inc.</u>, 583 F.3d 647, 652 (9th Cir. 2009) ("The Supreme Court has consistently recognized 'the emphatic federal policy in favor of arbitral dispute resolution,' a policy that 'applies with special force in the field of international commerce.'" (quoting <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 631 (1985))).

The Heath Defendants argue the Court should refuse enforcement of the award because they were not "parties" to the South African arbitration as required by the FAA. <u>See</u> 9 U.S.C. § 207 ("Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other *party* to the arbitration." (emphasis added)). The Heath Defendants, however, unduly minimize the scope of the Convention. Article III of the Convention provides that "[e]ach Contracting State shall recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon, under the conditions laid down in the [various provisions of the Convention]." In the United States, courts have recognized that non-signatories may be bound by an arbitration agreement under "ordinary contract and agency principles," such as agency or alter ego. <u>See, e.g.</u>, <u>Comer v. Micor, Inc.</u>, 436 F.3d 1098, 1101 (9th Cir. 2006); <u>In re Arbitration Between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukraine</u>, 311 F.3d 488, 494-95 (2d Cir. 2002) [hereinafter <u>Monegasque</u>]; <u>Letizia v. Prudential Bache Sec., Inc.</u>, 802 F.2d 1185, 1187-88 (9th Cir. 1986). The Court will analyze each of these theories in turn.[1]

### A.   Alter ego

The alter ego doctrine applies when "'there is such unity of interest and ownership that the separate personalities of the two entities no longer exist'" and "'failure to disregard their separate identities would result in fraud or injustice.'" <u>Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.</u>, 328 F.3d 1122, 1134-35 (9th Cir. 2003) (citation omitted). The presence of the same

---

[1] The Heath Defendants also argue the FAA does not apply in this case because there is no "legal relationship . . . which is considered as commercial" between Plaintiffs and the Heath Defendants. <u>See</u> <u>Walker & Zanger (West Coast) Ltd. v. Stone Design S.A.</u>, 4 F. Supp. 2d 931, 936 (C.D. Cal. 1997); <u>Prograph Int'l Inc. v. Barhydt</u>, 928 F. Supp. 983, 988 (N.D. Cal. 1996). However, in the present case, that relationship *does* exist between Defendants Nelson and Ebel, who were Plaintiffs' employees, and Plaintiffs. The Heath Defendants do not dispute this. The question for the Court, therefore, is whether an arbitration award arising from *this* legal relationship can be enforced against the Heath Defendants under the principles of either alter ego and/or agency.

officers and/or 100% control through stock ownership does not, by itself, make one entity an alter ego

of another. Id. at 1135. Rather, what is necessary is such "control over day-to-day activities" as to

render one entity "the mere instrumentality" of the other. Id.; accord Doe v. Unocal Corp., 248 F.3d

915, 926 (9th Cir. 2001) ("The first prong of [the alter ego] test has alternately been stated as requiring

a showing that the parent controls the subsidiary 'to such a degree as to render the latter the mere

instrumentality of the former.'" (quoting Calvert v. Huckins, 875 F. Supp. 674, 678 (E.D. Cal. 1995))).

Thus, the Ninth Circuit has explained that:

> [W]here a parent corporation uses its subsidiary "as a marketing conduit" and attempts
> to shield itself from liability based on its subsidiaries' activities, piercing the corporate
> veil is appropriate and the alter-ego test is satisfied. That test is also satisfied where the
> record indicates that the parent dictates "[e]very facet [of the subsidiary's]
> business-from broad policy decisions to routine matters of day-to-day operation [.]"

Unocal Corp., 248 F.3d at 926-27 (internal citations omitted).

Nonetheless, for the first prong of the alter ego test to be met under California law, Plaintiffs

must allege at least *some ownership* of Defendant IST by the Heath Defendants. See S.E.C. v. Hickey,

322 F.3d 1123, 1130 (9th Cir. 2003) (noting the "clear rule of law established by the California courts

that an individual *must* own at least part of a corporation for an alter ego relationship to exist."). In

the present case, while the SFAC arguably alleges necessary control by Mr. Heath over Defendant

IST, it fails to allege *any* ownership by Mr. Heath of at least a portion of Defendant IST. Without any

such showing, no alter ego relationship can exist under California law.[2] See id.

    B.    Agency

On the other hand, Plaintiffs have alleged sufficient facts to support their agency theory. To

satisfy the agency test, the plaintiff must demonstrate that one entity (the agent) represents another

(the principal) by performing services "sufficiently important" to the principal "'that if it did not have

a representative to perform them, the [principal] would undertake to preform substantially similar

services.'" See Harris Rutsky, 328 F.3d at 1135 (quoting Chan v. Society Expeditions, Inc., 39 F.3d

---

[2] The Court does note, however, that there is reason to question the reasoning behind the absolute rule articulated in Hickey. As at least one California court noted, the Ninth Circuit's decision in Hickey might represent an "incorrect statement[] of California law on this subject." See Logix Dev. Corp. v. Faherty, No. B178872, 2007 WL 3358745, at **10-11 (Cal. Ct. App. Nov. 14, 2007) (unpublished). Absent binding state authority, however, this Court is bound to apply California law as interpreted by the Ninth Circuit. Cf. Zuniga v. United Can Co., 812 F.2d 443, 450 (9th Cir. 1987).

1398, 1405-06 (9th Cir. 1994)). Thus, the agency test is satisfied "where the [agent] was 'either established for, or is engaged in, activities that, but for the existence of the [agent], the [principal] would have to undertake itself.'" See id. (quoting Chan, 39 F.3d at 1405-06 n.9).

In the present case, the SFAC adequately alleges that Mr. Heath was one of the primary architects behind the wrongdoings alleged. Thus, the SFAC alleges that Mr. Heath met with Nelson and Ebel on several occasions between January 2005 and January 2008, whereby the three of them formed a relationship that would eventually lead to Mr. Heath's manufacture, importation, and sale of the DefNder in the United States. (SFAC ¶¶ 46-47.) Specifically, the SFAC alleges Mr. Heath met with Nelson, Ebel, and Williams in January 2008, just before both Nelson and Ebel resigned from Leatt, where the four of them discussed their impending business ventures. (SFAC ¶ 48.) Indeed, the SFAC alleges that Mr. Heath, individually and through his companies, directed, authorized, and participated in all of the allegedly wrongful acts committed by Defendant IST and other Defendants. (See SFAC ¶¶ 49-51.) Furthermore, the SFAC sufficiently alleges that Defendant IST "represented" Mr. Heath during this time by performing services "sufficiently important" to Mr. Heath that if he did not have a representative to perform them, Mr. Heath would have to undertake to perform substantially similar services. See Harris Rutsky, 328 F.3d at 1135. Specifically, at the very least, there are sufficient facts alleged to conclude that without Defendant IST, Mr. Heath would have had to design and promote the DefNder product all by himself. (See SFAC ¶¶ 46-51.)

Similarly, the SFAC alleges sufficient facts to conclude that at all relevant times Mr. Heath exercised the necessary control over Defendant IST. For example, the SFAC alleges Mr. Heath is currently an investor of IST. (SFAC ¶ 89.) The SFAC also alleges Mr. Heath personally registered the <defNder.com> domain name in December 2008, which currently provides a link to the <defNderneckbrace.com> website that sells the DefNder product, and that he also personally owns and operates the website located at <defender.com>. (SFAC ¶¶ 52-53.) The SFAC further alleges Mr. Heath assisted Mr. Williams in registering the domain name <willrace.com>, which is a website for Williams Racing Developments, an entity owned and operated by a relative of Mr. Williams. (SFAC ¶ 54.) According to the SFAC, the Williams Racing Development company as well as the registration for the <willrace.com> domain name use the very same Santee, California address as that of Mr.

Health's own companies. (<u>Id.</u>) Furthermore, upon receiving Plaintiffs' cease and desist letters, Mr. Heath allegedly changed the ownership of the <defNderneckbrace.com> from his Speedworld Indoor Racing, Inc. company to another company solely owned by him–Defendant KHE. (SFAC ¶ 58.)

Based on all of the foregoing, Plaintiffs have alleged sufficient facts to demonstrate that the Heath Defendants could be bound by the actions of the other Defendants under the agency theory, and therefore could be bound by the South African Arbitration Award.[3] Accordingly, the Motion to Dismiss Plaintiffs' fourth cause of action is DENIED.

## II.    State law tort claims

Plaintiffs' second and third causes of action allege unfair competition and tortious interference, respectively. The Heath Defendants move to dismiss both of these claims as preempted under the Uniform Trade Secrets Act, CAL. CIV. CODE § 3426 et seq. ("UTSA"). In opposition, Plaintiffs argue the dismissal is not warranted because these causes of action include additional and independent allegations of wrongdoing based upon non-trade secret, but otherwise protectable, information. Moreover, because preemption under the UTSA requires a factual analysis of the claims, Plaintiffs argue dismissal is inappropriate at the pleading stage.

The "broad view" is that the UTSA's comprehensive structure and breadth suggests a legislative intent to occupy the field. See <u>K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.</u>, 171 Cal. App. 4th 939, 957 (2009) (citing <u>AccuImage Diagnostics Corp. v. Terarecon, Inc.</u>, 260 F. Supp. 2d 941, 953 (N.D. Cal. 2003)). Accordingly, the UTSA is deemed to "preempt" all common law claims that are "'based on the same nucleus of facts as the misappropriation of trade secrets claim

---

[3] Contrary to the Heath Defendants' arguments, this does not violate the "deep-rooted historic tradition" of American jurisprudence that "everyone should have his own day in court." See <u>Taylor v. Sturgell</u>, 553 U.S. 880, 128 S. Ct. 2161, 2171 (2008). As the Supreme Court in <u>Taylor</u> noted, there are several well-recognized exceptions to the rule against nonparty preclusion, such as: (1) agreement to be bound; (2) pre-existing substantive legal relationship between the person to be bound and a party to the judgment; (3) adequate representation by someone with the same interests who was a party to the suit; (4) assuming control over the litigation in which the judgment was rendered; (5) relitigation through a proxy; and (6) a special statutory scheme that may expressly foreclose successive litigation by nonlitigants in certain circumstances. <u>Id.</u> at 2172-73. In this case, a showing of a valid agency relationship between the Heath Defendants, who were not parties to the South African arbitration, and other Defendants, who were, is likely sufficient to fall within one of these exceptions.

1  for relief.'"[4] Id. at 959 (citing Digital Envoy, Inc. v. Google, Inc., 370 F. Supp. 2d 1025, 1035 (N.D.

2  Cal. 2005)); accord Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc., 318 F. Supp. 2d

3  216, 219-21 (D. Del. 2004) (applying California law).

4       Other claims are not preempted, however, when based upon a broader spectrum of misconduct

5  than misappropriation. See CAL. CIV. CODE § 3426.7(b) (noting that the UTSA does not affect "other

6  civil remedies that are not based upon misappropriation of a trade secret"); see also Ali v. Fasteners

7  for Retail, Inc., 544 F. Supp. 2d 1064, 1070 (E.D. Cal. 2008) (concluding that plaintiff's fiduciary duty

8  claim was not preempted by the UTSA); Phoenix Techs. Ltd. v. DeviceVM, No. C 09-04697 CW,

9  2009 WL 4723400, at **4-5 (N.D. Cal. Dec. 8, 2009) (concluding that plaintiffs' unfair competition

10 and tort claims were not preempted by the UTSA to the extent they were based on facts that were not

11 part of the nexus that formed the basis for their UTSA claim); Think Village-Kiwi, LLC v. Adobe

12 Sys., Inc., No. C 08-04166 SI, 2009 WL 902337, at **2-3 (N.D. Cal. Apr. 1, 2009) (allowing

13 amendment of the complaint to add common law claims for misappropriation and breach of

14 confidence to the extent those claims were based on a protectable interest other than a trade secret).

15      In this case, it appears Plaintiffs' second and third causes of action are based on more than just

16 the misappropriation of Plaintiffs' trade secrets. For example, Plaintiffs' unfair competition claim

17 states that the conduct underlying it includes, but is *not* limited to, misappropriation of trade secrets.

18 (SFAC ¶ 114.) Similarly, Plaintiffs' tortious interference claim states that the interference was based

19 upon knowledge of Plaintiffs' prospective business relationships (which may or may not be a trade

20 secret) as well as violation of Plaintiffs' common law rights *in addition to* any trade secret

21 misappropriation. (SFAC ¶¶ 118-22.) Finally, throughout their SFAC, Plaintiffs base their injury not

22 only on the theft of their trade secrets, but also on other "confidential" and/or "proprietary"

23 information. (See, e.g., SFAC ¶¶ 32, 36-37, 41, 50, 62-63, 89.) To the extent these claims are based

24 upon non-trade secret information, the Court agrees that they should be allowed to go forward at this

25

26

27          [4] Although the California Supreme Court has criticized the use of the word "preempt" to
   describe the supersession of one state law by another, see Zengen, Inc. v. Comerica Bank, 41 Cal. 4th
28 239, 247 n.5 (2007), the Court uses this term to be consistent with the decision in K.C. Multimedia,
   171 Cal. App. 4th at 959, as well as every district court to apply that decision.

stage.[5] See Phoenix Techs., 2009 WL 4723400, at **4-5 (noting that K.C. Multimedia "does not undermine the analytic framework enunciated in First Advantage and Think Village-Kiwi allowing claims to go forward where the gravamen of the claims does not rest on the misappropriation of trade secrets"); First Advantage Background Servs. Corp. v. Private Eyes, Inc., 569 F. Supp. 2d 929, 942 (N.D. Cal. 2008) (allowing a cross-claim for false promises to proceed so long as the confidential information that it was based on was not a trade secret).

Accordingly, to the extent Plaintiffs' second and third causes of action are based upon misappropriation of trade secrets, they are preempted by the UTSA and the Court GRANTS IN PART the motion to dismiss in this regard. However, to the extent these causes of action are based upon facts that are not part of the nexus that forms the basis for Plaintiffs' UTSA claim, they are not preempted, and the Court DENIES IN PART the motion to dismiss in this regard.

**CONCLUSION**

For the foregoing reasons, the Heath Defendants' motion to dismiss is **GRANTED IN PART and DENIED IN PART**. Specifically, the motion is **DENIED** to the extent it seeks dismissal of Plaintiffs' fourth cause of action for enforcement of the Arbitration Award. On the other hand, the motion to dismiss is **GRANTED IN PART** with respect to Plaintiffs' unfair competition and tortious interference claims to the extent those claims are based upon misappropriation of Plaintiffs' trade secrets. In that regard, those claims are **DISMISSED WITH PREJUDICE**. However, the motion to

///

///

///

_____

[5] In this regard, the Court is not persuaded by the Heath Defendants' heavy reliance on the California Court of Appeals' recent decision in Silvaco Data Sys. v. Intel Corp., 184 Cal. App. 4th 210 (2010). A careful reading of the Silvaco decision reveals that it does not undermine the conclusion that the UTSA only preempts additional claims that depend on the misappropriation of a trade secret. See, e.g., 184 Cal. App. 4th at 236 ("We thus reaffirm that CUTSA provides the exclusive civil remedy for conduct falling within its terms, so as to supersede other civil remedies 'based upon misappropriation of a trade secret.'" (citation omitted)); id. at 238 ("CUTSA's supersession clause applies to claims 'based upon misappropriation of a trade secret.'" (citation omitted)). Indeed, the Silvaco court itself found the plaintiff's unfair competition claim in that case not to be preempted where it did not depend on the existence of a trade secret, "but on knowingly facilitating another in the violation of its obligations under a judicial decree." Id. at 241-42. Similarly, in the present case, Plaintiffs' unfair competition and tortious interference claims are not preempted by the UTSA to the extent they depend on the misappropriation of otherwise confidential or proprietary, but not trade secret, information as well as upon knowledge of Plaintiffs' prospective business relationships.

1 dismiss is **DENIED IN PART** with respect to Plaintiffs' unfair competition and tortious interference

2 claims to the extent these claims are not based upon misappropriation of Plaintiffs' trade secrets.

3     **IT IS SO ORDERED.**

4

5 DATED:  July 15, 2010

6                    IRMA E. GONZALEZ, Chief Judge

                   United States District Court